CLERK COMMON PLEAS COURT LICKING CO. OHIO
2017 SEP 11 PM 1:29
GARY R. WALTERS CLERK

**IN THE COURT OF COMMON PLEAS**
**LICKING COUNTY, OHIO**

JEFFREY WONSER
65 Jeffery Lane
Heath, OH 43056

Plaintiff,

v.

THE BOEING COMPANY
801 Irving Wick Dr. W.
Heath, OH 43056

**Serve Also:**
c/o Corporation Service Company
50 West Broad Street, Suite 1330
Columbus, OH 43215

Defendant.

CASE NO.

JUDGE: 17CV0987 TMM

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Jeffrey Wonser, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

**PARTIES & VENUE**

1. Wonser is a resident of the city of Heath, Licking County, State of Ohio.
2. Defendant The Boeing Company ("Boeing") is a foreign corporation with its principal place of business located at 100 North Riverside, Chicago, Illinois 60606. However, all or part of Wonser's claims for relief arose at Boeing's facility located at 801 Irving Wick Dr. W., Heath, OH 43056.
3. All material events alleged in this Complaint occurred in Licking County, Ohio.
4. Personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1) and/or (A)(3).
5. Venue is proper pursuant to Ohio R. Civ. P. 3(B)(1), (2), (3), and/or (6).





6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Wonser is a former employee of Boeing.
8. Wonser worked for Boeing as a Production Coordinator, from on or about March 4, 2016, until Boeing terminated Wonser's employment on or about March 14, 2017.
9. As a Production Coordinator, Wonser's responsibilities included, but were not limited to, moving test equipment and organizing ICBM test equipment for inventory.
10. During his employment with Boeing, Wonser regularly received positive verbal and written reviews and feedback regarding his work performance.
11. Indeed, only a few weeks before his termination, Wonser received a performance based incentive bonus and a salary raise.
12. Wonser initially began his employment with Boeing in March 2016. By May 2016, he was already experiencing problems with his supervisor, Jeff Hetrick, who treated Wonser differently than other employees and refused to provide the support and training necessary to assist Wonser in his job.
13. In or around May 2016, Wonser went to Boeing's Human Resources Department to report how he was being treated by Hetrick. HR failed to take any action to remedy the situation, but did encourage Wonser and Hetrick to sit down and work through their issues together.
14. During one of these sit-downs, Hetrick told Wonser, "if you ever go to HR on me again, consider it career suicide."
15. As the months passed, Wonser continued to experience problems with Hetrick. As a Production Coordinator, Wonser split his time between the Metrology department and the





ICBM department. Wonser reported to Hetrick, even though Hetrick was in charge of only the Metrology department, not the ICBM department.

16. To track his time in each department, Wonser would log his hours – in 6-minute increments – depending on the actual time he spent on certain projects.

17. Each department had its own budget, for which the respective supervisors were responsible.

18. In or around November 2016, Hetrick called Wonser into a meeting and ordered him to change his billing practices; Hetrick ordered Wonser to bill the ICBM department a minimum of 4 hours per day, regardless of whether Wonser actually worked 4 hours in that department.

19. Wonser refused Hetrick's order, stating it was unethical and illegal for him to mischarge his time in that manner.

20. In response, Hetrick became angry, stated that ICBM had more money than Metrology, and emphasized that he was <u>ordering</u> Wonser to start billing his time that way. Per Wonser's request, Hetrick even sent Wonser written instructions pertaining to the mischarging.

21. Shortly after this meeting, Wonser reported Hetrick's order to mischarge his time between Metrology and ICBM to Vonetta Walsh in HR.

22. In response, Walsh simply told Wonser that she was not aware of the company policy on this issue, and thus, did nothing to remedy the situation.

23. The next day, one of Wonser's co-workers, Doug Snyder, approached Wonser and told him that Hetrick was angry because Wonser had reported him to HR; according to Snyder, Hetrick was going to terminate Wonser's employment.





24. Indeed, later that day, Hetrick called Wonser and Snyder into a meeting, where he told them, "because Jeff reported this, and someone cares about being honest, I'm going to have to get rid of one or both of your jobs".

25. Wonser reported Hetrick's threat of retaliation to HR.

26. Following Hetrick's threat to terminate Wonser's employment, Beoing temporarily reassigned Wonser to a different supervisor.

27. In or around December 2016, during a finance meeting, Wonser – as well as the other employees in the meeting – were informed that they needed to charge their actual time to projects (not the 4-hour minimum as mandated by Hetrick), but that they were not going to take any action to remedy the past mischarges. Again, Wonser objected because it was unethical and illegal to not correct the prior mischarges.

28. In or around January 2017, Wonser was reassigned to the Metrology department under Hetrick.

29. In an apparent effort to avoid any further conflicts between Hetrick and Wonser, the company assigned Dave Williams to act as a liaison between the two.

30. Shortly after being reassigned to Hetrick's group – and after the company had already ordered the employees to charge their actual time to projects – Williams told Wonser that Hetrick again wanted him to start mischarging his time. Again, Wonser refused.

31. This time, Wonser called the company's ethics hotline to report Hetrick's order to mischarge his time, and to report that the company was refusing to correct prior mischarges.





32. Additionally, Wonser again went to Walsh in HR to report Hetrick's conduct. Wonser sought advice from Walsh about how he should proceed, and asked if he could again be reassigned to a different supervisor.

33. Rather than remedy the situation or provide any assistance to Wonser, Walsh informed him that Boeing was going to "release him from employment."

34. Walsh asked Wonser several times if he would rather resign. Wonser indicated he did not want to quit, so Walsh proceeded with his termination.

35. On or about date, March 14, 2017, Wonser was actually terminated in retaliation for making complaints of dangerous, unsafe, or illegal activity and misconduct.

36. Defendant's purported reason for Wonser's termination is pretext for retaliation.

37. Defendant did not proffer a legitimate, non-retaliatory reason for terminating Wonser.

38. As a result of being wrongfully terminated from Boeing, Wonser has suffered damages, including but not limited to, severe emotional distress, anxiety, and depression.

**COUNT I: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.**

39. Wonser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

40. On or about November 28, 2016, Wonser reported to Boeing and HR that Hetrick had ordered him to engage in unethical and/or illegal billing practices with regards to his time in the Metrology and ICBM departments.

41. Wonser reasonably believed that mischarging his time on government contracts was unethical and/or illegal, or the alternative, Wonser reasonably believed that mischarging his time on government contracts constituted a criminal act that threatens the public's health or safety.





42. Wonser verbally complained to Defendant regarding this conduct.

43. Wonser complained to Defendant in writing regarding this conduct.

44. Wonser gave Defendant an opportunity to cure the reported misconduct.

45. Defendant retaliated against Wonser by terminating his employment based on his complaints regarding this conduct.

46. Defendant's termination of Wonser was in violation of R.C. § 4113.52.

47. As a direct and proximate result of Defendant's conduct, Wonser suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

48. Wonser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

49. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

50. Defendant's termination of Wonser jeopardizes these public policies.

51. Defendant's termination of Wonser was motivated by conduct related to these public policies.

52. Defendant had no overriding business justification for terminating Wonser.

53. As a direct and proximate result of Defendant's conduct, Wonser has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.





## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. Wonser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

55. Defendant intended to cause Wonser emotional distress, or knew that their acts or omissions would result in serious emotional distress to Wonser.

56. Defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

57. As a direct and proximate result of Defendant's acts and omissions as set forth above, Wonser has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

58. As a direct and proximate result of Defendant's conduct and the resulting emotional distress, Wonser has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Wonser demands from Defendant the following:

(a) Issue a permanent injunction:

(i) Requiring Defendant to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;





(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Wonser to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Wonser for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Wonser's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Brian D. Spitz (0068816)
Matthew G. Bruce (0083769)
**THE SPITZ LAW FIRM, LLC**
The WaterTower Plaza
25200 Chagrin Blvd, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
Matthew.Bruce@SpitzLawFirm.com





**JURY DEMAND**

Plaintiff Jeffrey Wonser demands a trial by jury by the maximum number of jurors permitted.

Brian D. Spitz (0068816)
Matthew G. Bruce (0083769)
**THE SPITZ LAW FIRM, LLC**



